IN RE VILLAGE OF NEW BRIGHTON RESOLUTION 862 ASSESSING CERTAIN PROPERTIES.
E. H. WILLMUS PROPERTIES, INC., AND ANOTHER v. VILLAGE OF NEW BRIGHTON.

199 N. W. 2d 435.

June 23, 1972—No. 43460.

■

*Lewis L. Anderson,* for appellants.

*Perry W. Copeland,* for respondent.

Heard before Knutson, C. J., and Todd, MacLaughlin, and Gunn, JJ.

WILLIAM D. GUNN, JUSTICE.*

This is an appeal from a judgment entered pursuant to findings of fact and conclusions of law by the trial court affirming assessments made and levied by the New Brighton Village Council against appellants' properties.

At issue is the assessment against two properties owned by E. H. Willmus Properties, Inc., and an assessment against a tract owned by Thomas M. Willmus, individually, for right-of-way acquisition and installation of a water main across those properties. The three parcels, which at present remain largely undeveloped, are generally referred to as the Willmus Industrial Park. The disputed assessments were made for the construction of a 12-inch water main to provide additional service to that previously available from a 6-inch main.

The general issue raised by appellants is whether the evidence supports the lower court's finding that the assessed properties will receive special benefits commensurate with the assessments levied.

The evidence presented at trial was rather superficial in view of the complexity of the issue involved. The only witness called to testify on behalf of appellants was Thomas Willmus who stated that, based on his 15 years' experience in the property-

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

development field, he did not believe the properties in question have received any special benefits or that their market value has increased as a result of the installation of the new water main. His opinion was controverted by two witnesses called by respondent. These witnesses, Quentin Wood and Donald Carley, both engineers, testified that the assessments levied against the subject properties were arrived at by following a formula involving a conversion of a front-footage formula that has been developed in the past into an acreage formula in an attempt to reach fair and equitable results. When the 12-inch main was installed, the assessments for the subject properties continued to be formulated for a 6-inch main since the 12-inch size was designed in part to provide an "over-all benefit to the Village." Furthermore, Mr. Wood testified, credit was given for assessments previously levied against the properties for the existing 6-inch main.

The witnesses for the village testified that the subject properties receive benefits from the new water main because of the increased service to be derived from it and because the main is a part of a larger, integrally planned water system for the village. The subject properties will directly benefit from the increased availability of water and additional fire hydrants provided by the new larger main. In addition, the new main will be part of a new "looped" water system that will provide continuity of water service in the event of breaks elsewhere in the line and will provide increased water pressure in case of high demand, such as accompanies the use of fire-fighting equipment. For these reasons, the testimony indicates, more flexibility will be possible in future industrial development of the subject properties, and lower fire insurance rates will result from the installation of the new main.

The specific issues presented for our consideration in this appeal are:

(a)   Whether the testimony of Thomas Willmus was sufficient to overcome the prima facie case, established by the intro-

duction of the assessment roll for the improvement involved, that there was a benefit to the property.

(b) Whether, if the prima facie case of the village was met by the testimony of Mr. Willmus, the testimony of witnesses for the village was sufficient to establish that there were special benefits to the affected property so that some assessment for these benefits was justified.

(c) Whether, if there were some special benefits to the involved property, there was evidence from which the trial judge could conclude that such benefits were substantially equal to assessments levied.

1. In this case it is conceded that the regular and statutory assessment procedures were followed in levying the assessments. This was prima facie proof of the amount by which the property assessed was benefited. But it was not conclusive proof, and if there was evidence to the contrary, a question of fact was presented for determination by the trial judge. Village of Edina v. Joseph, 264 Minn. 84, 95, 119 N. W. 2d 809, 816 (1962), and cases cited therein; Armour v. Village of Litchfield, 152 Minn. 382, 188 N. W. 1006 (1922). After the assessment roll was offered, appellant Thomas Willmus testified. Mr. Willmus, in addition to being the owner of one of the assessed parcels and president of the corporation owning the other two parcels, had an extensive background in real estate and industrial development. His opinion was that the properties received no special benefits from the installation of the 12-inch water main. He was the only witness for appellants. At the conclusion of his testimony, the village moved "to dismiss the appeal on the grounds that Appellants have failed to even make out a prima facie case." The court denied this motion, saying, "I suppose the testimony that this property has received no benefit from the line is sufficient to establish a prima facie case."[1]

---

[1] It is not important that the parties and the court proceeded on the theory that it was for appellants to establish a prima facie case, overlooking the fact that the introduction of the assessment roll established

We agree with the trial court on this issue. Mr. Willmus as an owner was competent to express an opinion. Because of his experience and background, the court could properly have given more weight to his opinion than to the opinion of a less qualified owner. The prima facie case of the village was effectively met by the testimony of Mr. Willmus.

2. We have previously reviewed the testimony of Quentin Wood and Donald Carley, called as witnesses for the village. Their testimony indicates that there were special benefits to the assessed property in at least the following respects:

(a) If appellants had connected with the preexisting 6-inch water main for use by new structures, this would have required the installation of lateral connections at some expense to the owners of the property.

(b) The 12-inch water main will insure a more adequate and dependable water supply for appellants' property.

(c) Two fire hydrants from the new main will serve the affected property.

(d) A more adequate and dependable water supply will decrease fire insurance rates.

(e) The preexisting water supply would probably have been inadequate for the contemplated future development of the property.

We are satisfied that the court properly inferred that there were special benefits to the property assessed justifying some assessment for benefits.

3. The question remains whether or not evidence in the record justified the further conclusion of the court that benefits conferred were substantially equal to the assessments levied. On this point the court said:

---

prima facie that the assessment was regular and that the property had received benefits substantially equal to the amount of the assessments. For purposes of the questions considered, it is as it would have been if the court had ruled that appellants' testimony was sufficient to overcome the prima facie case established by introduction of the assessment roll.

"The specific method by which the monetary value of any special benefits to the properties was computed is, without admitting any benefits accrued, apparently not disputed by appellants; and, in any event, the Court finds it to be a reasonable one which has produced a sum of money bearing a reasonable relationship to the increased value of the properties by reason of the special benefits conferred."

Three rules, applicable here, have developed in prior decisions of this court. They are: (1) Even though the procedure used in levying assessments is regular, the questions of whether the property assessed received any special benefit and whether the assessment made exceeds the special benefit received are open for review; (2) assessments must bear some reasonable relationship to the value of special benefits; and (3) the value of special benefits is found by determining what increase, if any, there has been in the market value of the benefited land.[2]

---

[2] In Village of Edina v. Joseph, 264 Minn. 84, 95, 119 N. W. 2d 809, 816 (1962), we said: "It was held in In re Assessment for Improving Superior Street, 172 Minn. 554, 216 N. W. 318, that when an assessment for a local improvement has been made by the proper municipal board or officers under due legislative authority and in the regular course of procedure such assessment is prima facie valid, and the burden rests upon the objector to prove its invalidity. This court also held in that case that an assessment so made, in the absence of fraud, mistake, or illegality, is conclusive upon the courts, except that the questions of whether the property assessed received any special benefit from the improvement and whether the assessment made exceeds to a substantial amount the special benefits received are open for review."

In City of St. Louis Park v. Engell, 283 Minn. 309, 316, 168 N. W. 2d 3, 8 (1969), in commenting on the procedure to be followed in determining the value of benefits resulting from improvements after reviewing prior decisions, we said: "It is made clear in our cases dealing with special benefits that the same measure is utilized in this state to determine the amount of special benefits in a condemnation proceeding or in a levy of a special assessment.

"This court has held that in assessment procedures special benefits are determined by the amount of the increase in the market value of

The situation presented to the trial court and to this court is this: When the assessment roll was received, a prima facie case for the village was established. After the testimony of Mr. Willmus that there were no benefits, the trial court was satisfied (and we agree) that the prima facie case had been successfully countered. After the testimony of the two witnesses for the village, the trial court concluded that there were special benefits to the property involved. We agree.

The difficulty is that we cannot find in the record any evidentiary basis for the further conclusion that there was a reasonable relationship between special benefits and special assessments. We know, as did the trial judge, that the special assessments were $24,544. We also know, as did the trial judge, that there were some special benefits. However, the value of the benefits, as nearly as we can determine from the record, is not shown. The fair market value of the property might have been increased $1,000, or it might have been increased $50,000. One guess would be as good as the other on this record.

After the court found that the testimony of Mr. Willmus had overcome the prima facie case, the village, in the circumstances of this case, should have presented evidence showing a sufficient relationship between the special assessments and the special

the property attributable to the improvement. See, In re Improvement of Superior Street, Duluth, 172 Minn. 554, 216 N. W. 318; Spencer, *The New Minnesota Improvement-Assessment Procedure (Chapter 398, Laws of 1953),* 38 Minn. L. Rev. 582. The same measure is utilized in condemnation cases where special benefits are properly deducted from the damages awarded. State, by Mondale, v. Mecklenburg [273 Minn. 135, 140 N. W. 2d 310]; State, by Lord, v. Hayden Miller Co. 263 Minn. 29, 116 N. W. (2d) 535.

*"It is clear from the foregoing authorities that in both eminent domain and assessment proceedings the value of special benefits is found by determining what increase, if any, there has been in the fair market value of the benefited land."* (Italics supplied.)

benefits to justify the assessments. It was not enough merely to establish that there were some special benefits.

Reversed and remanded for a new trial.[3]

---

[3] Here, appellants' property is the only property upon which special assessments were levied for the improvement although it appears that there were general benefits to this and other property in the village as a result of the improvement. This circumstance seems to be an additional reason why the question of the value of the benefits to the land in relation to the assessments should have been given more attention.